**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: NATIONAL SECURITY AGENCY
TELECOMMUNICATIONS RECORDS
LITIGATION,

_____

TASH HEPTING; GREGORY HICKS;
ERIK KNUTZEN; CAROLYN JEWEL, on
behalf of themselves and all other
similarly situated,
                    *Plaintiffs-Appellants,*

                    v.

AT&T CORPORATION; AT&T, INC.,
                    *Defendants-Appellees,*

UNITED STATES OF AMERICA,
        *Defendant-intervenor-Appellee.*

No. 09-16676

D.C. Nos.
3:06-cv-00672-
VRW
M:06-cv-01791-
VRW


SEAN BASINSKI, on behalf of
himself and all others similarly
situated; ALL PLAINTIFFS,
                    *Plaintiffs-Appellants,*

                    v.

VERIZON COMMUNICATIONS, INC.;
VERIZON,
                    *Defendants-Appellees,*

UNITED STATES OF AMERICA,
        *Defendant-intervenor-Appellee.*

No. 09-16677

D.C. Nos.
3:06-cv-06434-
VRW
M-06-cv-01791-
VRW


21545

RICHARD D. SUCHANEK, III, on
behalf of himself and all others
similarly situated; ALL PLAINTIFFS,
            *Plaintiffs-Appellants,*

              v.

SPRINT NEXTEL CORPORATION,
            *Defendant-Appellee,*

UNITED STATES OF AMERICA,
    *Defendant-intervenor-Appellee.*

No. 09-16679

D.C. Nos.
3:06-cv-06295-
VRW
M:06-cv-01791-
VRW

CHARLES F. BISSITT; SANDRA
BISSITT; GEORGE HAYEK, III; JUNE
MATRUMALO; GERARD THIBEAULT;
ARTHUR BOUCHARD; MARYANN
BOUCHARD; ALDO CAPARCO; JANICE
CAPARCO; JENNA CAPARCO; ROSE
DELUCA; NICOLE MIRABELLA;
PATRICIA POTHIER; PAUL POTHIER;
MARSHALL VOTTA; VINCENT
MATRUMALO; PAULA MATRUMALO;
JENNIFER THOMAS; CHRISTINE
DOUQUETTE; MARYANN KLACZYNSKI;
ALL PLAINTIFFS,
            *Plaintiffs-Appellants,*

              v.

VERIZON COMMUNICATIONS, INC.;
VERIZON,
            *Defendants-Appellees.*

No. 09-16682

D.C. Nos.
3:06-cv-05066-
VRW
M:06-cv-01791-
VRW

CHRISTOPHER BREADY; ANNE
BREADY; KYU CHUN KIM; JENET
ARTIS; CLAUDIS ARTIS; DAVID
BEVERLY, Jr.; ALL PLAINTIFFS,
*Plaintiffs-Appellants,*

v.

VERIZON MARYLAND, INC.; VERIZON,
*Defendants-Appellees,*

UNITED STATES OF AMERICA,
*Defendant-intervenor-Appellee.*

No. 09-16683

D.C. Nos.
3:06-cv-06313-
VRW
M:06-cv-01791-
VRW

TOM CAMPBELL; GEORGE MAIN; DENNIS P. RIORDAN; MARGARET RUSSELL; ROBERT SCHEER; PETER SUSSMAN; RICHARD BELZER; MARC COOPER; STEPHEN J. MATHER; SANDRA RICHARDS; CURREN WARF; AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, a nonprofit corporation; ACLU OF SOUTHERN CALIFORNIA, a nonprofit corporation; AMERICAN CIVIL LIBERTIES UNION OF SAN DIEGO/IMPERIAL COUNTIES, a nonprofit corporation; ALL PLAINTIFFS,
                    *Plaintiffs-Appellants,*

                    v.

AT&T COMMUNICATIONS OF CALIFORNIA, a corporation; AT&T CORP., a corporation,
                    *Defendants-Appellees,*

UNITED STATES OF AMERICA,
    *Defendant-intervenor-Appellee.*

No. 09-16684

D.C. Nos.
3:06-cv-03596-VRW
M:06-cv-01791-VRW

DENNIS P. RIORDAN; EDWARD
GERARD DE BONIS; ROBERT S.
GERSTEIN; ROD GORNEY; ROBERT
JACOBSON; VINCENT J. MANISCALCO;
CAROL SOBEL; AMERICAN CIVIL
LIBERTIES UNION OF NORTHERN
CALIFORNIA, a nonprofit
corporation; ACLU OF SOUTHERN
CALIFORNIA, a nonprofit
corporation; AMERICAN CIVIL
LIBERTIES UNION OF SAN
DIEGO/IMPERIAL COUNTIES, a
nonprofit corporation; ALL
PLAINTIFFS,
   *Plaintiffs-Appellants,*

    v.

VERIZON COMMUNICATIONS, INC., a
corporation; VERIZON,
   *Defendants-Appellees,*

UNITED STATES OF AMERICA,
  *Defendant-intervenor-Appellee.*

No. 09-16685
D.C. Nos.
3:06-cv-03574-
VRW
M:06-cv-01791-
VRW

GLEN CHULSKY; ALEJANDRO
TROMBLEY; SAMUEL FISHER; OMAR
MORENO; PAUL ROBILOTTI; STEPHEN
TERNLUND; ANATOLY SAPOZNICK;
ALL PLAINTIFFS,
                *Plaintiffs-Appellants,*

v.

CELLCO PARTNERSHIP, DBA
Verizon Wireless; VERIZON,
Verizon Communications, Inc.;
AT&T, INC.; CINGULAR WIRELESS,
                *Defendants-Appellees,*

UNITED STATES OF AMERICA,
    *Defendant-intervenor-Appellee.*

No. 09-16686

D.C. Nos.
3:06-cv-06570-
VRW
M:06-cv-01791-
VRW

CHARMAINE CROCKETT; A. JORIS
WATLAND; ANAKALIA KALUNA; KIM
COCO IWAMOTO; WILLIAM R.
MASSEY, individually and on
behalf of all others similarly
situated; ALL PLAINTIFFS,
                *Plaintiffs-Appellants,*

v.

VERIZON WIRELESS, (VAW) LLC;
HAWAIIAN TELECOM, INC., DBA
Verizon Hawaii; NEXTEL WEST
CORP., DBA Sprint; CINGULAR
WIRELESS LLC; VERIZON,
                *Defendants-Appellees,*

UNITED STATES OF AMERICA,
    *Defendant-intervenor-Appellee.*

No. 09-16687

D.C. Nos.
3:06-cv-06254-
VRW
M:06-cv-01791-
VRW

TRAVIS CROSS; JOHN ELDER;
GABRIEL FILEPPELLI; SAM
GOLDSTEIN; HEALING ARTS CENTER;
DAVID KADLEC; THE LIBERTARIAN
PARTY OF INDIANA; TIM PETERSON;
CAROLYN W. RADER; SAM
GOLDSTEIN INSURANCE AGENCY,
INC.; SEAN SHEPPARD; ALL
PLAINTIFFS,
               *Plaintiffs-Appellants,*

                  v.

AT&T COMMUNICATIONS, INC.;
AT&T CORP.; AT&T
TELEHOLDINGS, INC., FKA SBC;
BRIGHT HOUSE NETWORKS, LLC;
CINGULAR WIRELESS, LLC;
COMCAST TELECOMMUNICATIONS,
INC.; INDIANA BELL TELEPHONE
COMPANY, INC., DBA SBC
Ameritech Indiana; MCI
COMMUNICATIONS SERVICES, INC.;
NEXTEL WEST CORP., DBA Sprint
Nextel; SPRINT COMMUNICATIONS
COMPANY, L.P.; SPRING SPECTRUM
L.P.; TDS COMMUNICATIONS
SOLUTIONS, INC.; VERIZON WIRELESS
SERVICES, INC.; VERIZON,
               *Defendants-Appellees,*

UNITED STATES OF AMERICA,
     *Defendant-intervenor-Appellee.*

No. 09-16688

D.C. Nos.
3:06-cv-06222-
VRW
M:06-cv-01791-
VRW

JOAN DUBOIS; CHRISTOPHER YOWTZ;
REBECCA YOWTZ; ALL PLAINTIFFS,
     *Plaintiffs-Appellants,*

           v.

AT&T CORP.; CHARTER
COMMUNICATIONS LLC; MCI
COMMUNICATIONS SERVICES, INC.;
TRANSWORLD NETWORK CORP.;
VERIZON WIRELESS, LLC; VERIZON,
     *Defendants-Appellees,*

UNITED STATES OF AMERICA,
     *Defendant-intervenor-Appellee.*

No. 09-16690

D.C. Nos.
3:06-cv-06387-
VRW
M:06-cv-01791-
VRW

TRAVIS CROSS; JOHN ELDER;
GABRIEL FILEPPELLI; SAM
GOLDSTEIN; HEALING ARTS CENTER;
DAVID KADLEC; THE LIBERTARIAN
PARTY OF INDIANA; TIM PETERSON;
CAROLYN W. RADER; SAM
GOLDSTEIN INSURANCE AGENCY,
INC.; SEAN SHEPPARD, individually
an on behalf of others similarly
situated; ALL PLAINTIFFS,
                    *Plaintiffs-Appellants,*

                    v.

AT&T COMMUNICATIONS OF
CALIFORNIA, INC.; AT&T CORP.;
AT&T TELEHOLDINGS, INC.; BRIGHT
HOUSE NETWORKS, LLC; CINGULAR
WIRELESS, LLC; COMCAST
TELECOMMUNICATIONS, INC.; INDIANA
BELL TELEPHONE COMPANY
INCORPORATED, other SBC
Ameritech Indiana; MCI
WORLDCOM ADVANCED NETWORKS,
LLC; MCLEODUSA
TELECOMMUNICATIONS SERVICES,
INC.; NEXTEL WEST CORP., DBA
Sprint Nextel Corporation; SPRINT
COMMUNICATIONS COMPANY L.P.;
SPRING SPECTRUM L.P.; TDS
COMMUNICATIONS SOLUTIONS, INC.;
VERIZON WIRELESS SERVICES, LLC;
VERIZON,
                    *Defendants-Appellees,*

UNITED STATES OF AMERICA,
        *Defendant-intervenor-Appellee.*

No. 09-16691
D.C. Nos.
3:06-cv-06224-
VRW
M:06-cv-01791-
VRW

Pat Mahoney, individually, and
on behalf of all others similarly
situated; All Plaintiffs,
                *Plaintiffs-Appellants,*

                    v.

AT&T Communications, Inc.;
AT&T Corp.,
                *Defendants-Appellees,*

United States of America,
        *Defendant-intervenor-Appellee.*

No. 09-16692
D.C. Nos.
3:06-cv-05065-
VRW
M:06-cv-01791-
VRW

Pamela A. Mahoney, on behalf of
herself and all others similarly
situated; All Plaintiffs,
                *Plaintiffs-Appellants,*

                    v.

Verizon Communications, Inc.;
Verizon,
                *Defendants-Appellees,*

United States of America,
        *Defendant-intervenor-Appellee.*

No. 09-16693

D.C. Nos.
3:06-cv-05064-
VRW
M:06-cv-01791-
VRW

MARK P. SOLOMON, MD, on behalf
of himself and all others similarly
situated; ALL PLAINTIFFS,
　　　　　　*Plaintiffs-Appellants,*

　　　　　　v.

VERIZON COMMUNICATIONS, INC.;
VERIZON,
　　　　　　*Defendants-Appellees,*

UNITED STATES OF AMERICA,
　　*Defendant-intervenor-Appellee.*

No. 09-16694

D.C. Nos.
3:06-cv-06388-
VRW
M:06-cv-01791-
VRW

RHEA FULLER, on behalf of herself
and all others similarly situated;
ALL PLAINTIFFS,
　　　　　　*Plaintiffs-Appellants,*

　　　　　　v.

VERIZON COMMUNICATIONS, INC.;
VERIZON WIRELESS, LLC; VERIZON,
　　　　　　*Defendants-Appellees,*

UNITED STATES OF AMERICA,
　　*Defendant-intervenor-Appellee.*

No. 09-16696

D.C. Nos.
3:06-cv-05267-
VRW
M:06-cv-01791-
VRW

SHELLY D. SOUDER; ALL PLAINTIFFS,
*Plaintiffs-Appellants,*

v.

AT&T INC.; AT&T CORP.,
*Defendants-Appellees,*

UNITED STATES OF AMERICA,
*Defendant-intervenor-Appellee.*

No. 09-16697
D.C. Nos.
3:06-cv-05067-
VRW
M:06-cv-01791-
VRW

STEVE DOLBERG, on behalf of
himself and all others similarly
situated; ALL PLAINTIFFS,
*Plaintiffs-Appellants,*

v.

AT&T, INC.; AT&T CORP.,
*Defendants-Appellees,*

UNITED STATES OF AMERICA,
*Defendant-intervenor-Appellee.*

No. 09-16698

D.C. Nos.
3:06-cv-05269-
VRW
M:06-cv-01791-
VRW

THERESA FORTNASH; ALL
PLAINTIFFS,
*Plaintiffs-Appellants,*

v.

AT&T CORP.,
*Defendant-Appellee,*

UNITED STATES OF AMERICA,
*Defendant-intervenor-Appellee.*

No. 09-16700

D.C. Nos.
3:06-cv-06385-
VRW
M:06-cv-01791-
VRW

D. CLIVE HARDY; ALL PLAINTIFFS,
            *Plaintiffs-Appellants,*

            v.

AT&T CORPORATION,
            *Defendant-Appellee,*

UNITED STATES OF AMERICA,
            *Defendant-intervenor-Appellee.*

No. 09-16701

D.C. Nos.
3:06-cv-06924-
VRW
M:06-cv-01791-
VRW

JAMES C. HARRINGTON; RICHARD A.
GRIGG; LOUIS BLACK; THE AUSTIN
CHRONICLE; MICHAEL KENTOR, on
behalf of themselves and all others
similarly situated; ALL PLAINTIFFS,
            *Plaintiffs-Appellants,*

            v.

AT&T, INC.; AT&T CORP.; AT&T
OPERATIONS INC.; NEW CINGULAR
WIRELESS SERVICES, INC.,
            *Defendants-Appellees.*

No. 09-16702

D.C. Nos.
3:06-cv-05452-
VRW
M:06-cv-01791-
VRW

Tina Herron; Brandy Sergi,
individually and as representative
of all similarly situated
individuals; All Plaintiffs,
                    *Plaintiffs-Appellants,*

                    v.

Verizon Global Networks, Inc.;
AT&T Corp.; American
Telephone and Telegraph
Company; BellSouth
Communication Systems, LLC;
BellSouth Telecommunications,
Inc.; Verizon,
                    *Defendants-Appellees,*

United States of America,
     *Defendant-intervenor-Appellee.*

No. 09-16704

D.C. No.
3:06-cv-05343-
VRW

Darryl Hines; Alex Klabacka;
Jana Klabacja; All Plaintiffs,
                    *Plaintiffs-Appellants,*

                    v.

Verizon Northwest, Inc., an
active Washington corporation;
Verizon Communications, Inc., an
active Delaware corporation;
Verizon,
                    *Defendants-Appellees,*

United States of America,
     *Defendant-intervenor-Appellee.*

No. 09-16706

D.C. Nos.
3:06-cv-05341-
VRW
M:06-cv-01791-
VRW

HOWARD JACOBS, a natural person;
LAURENCE KORNBLUM, a natural
person; KATHLEEN MILLER, a
natural person, on behalf of
themselves and all others similarly
situated; ALL PLAINTIFFS,
*Plaintiffs-Appellants,*

v.

AT&T CORP., a foreign
corporation; AMERICAN TELEPHONE
AND TELEGRAPH COMPANY, a
foreign corporation; BELLSOUTH
TELECOMMUNICATIONS, INC., a
foreign corporation; CINGULAR
WIRELESS LLC, a foreign limited
liability company; VERIZON
COMMUNICATIONS, INC., a foreign
limited liability company; VERIZON
FLORIDA, INC., a Florida
corporation; VERIZON,
*Defendants-Appellees,*

UNITED STATES OF AMERICA,
*Defendant-intervenor-Appellee.*

No. 09-16707

D.C. Nos.
3:07-cv-02538-
VRW
M:06-cv-01791-
VRW

CLAUDIA MINK; ALL PLAINTIFFS,
               *Plaintiffs-Appellants,*

                    v.

AT&T COMMUNICATIONS OF THE
SOUTHWEST, INC., a Delaware
corporation; SOUTHWESTERN BELL
TELEPHONE, L.P., a Texas limited
partnership; SBC LONG DISTANCE,
LLC, a Delaware corporation,
               *Defendants-Appellees,*

UNITED STATES OF AMERICA,
        *Defendant-intervenor-Appellee.*

No. 09-16708
D.C. Nos.
3:06-cv-07934-
VRW
M:06-cv-01791-
VRW

RICHARD ROCHE; ALL PLAINTIFFS,
               *Plaintiffs-Appellants,*

                    v.

AT&T CORP.,
               *Defendant-Appellee,*

UNITED STATES OF AMERICA,
        *Defendant-intervenor-Appellee.*

No. 09-16709
D.C. Nos.
3:07-cv-01243-
VRW
M:06-cv-01791-
VRW

BENSON B. ROE; PAUL GOLTZ,
individually and on behalf of all
others similarly situated; ALL
PLAINTIFFS,

*Plaintiffs-Appellants,*

v.

AT&T CORP., a New York
corporation; AT&T INC., a
Delaware corporation; SBC LONG
DISTANCE, LLC, a Delaware
limited liability company, DBA
AT&T Long Distance; PACIFIC
BELL TELEPHONE COMPANY, a
California corporation, DBA
AT&T California; AT&T
COMMUNICATIONS OF CALIFORNIA,
INC., a California corporation,

*Defendants-Appellees,*

UNITED STATES OF AMERICA,
*Defendant-intervenor-Appellee.*

No. 09-16710

D.C. Nos.
3:06-cv-03467-
VRW
M:06-cv-01791-
VRW

ELAINE SPIELFOGEL-LANDIS, on
behalf of herself and all others
similarly situated; ALL PLAINTIFFS,
*Plaintiffs-Appellants,*

v.

MCI, LLC, a Delaware limited
liability company; VERIZON,
*Defendants-Appellees,*

UNITED STATES OF AMERICA,
*Defendant-intervenor-Appellee.*

No. 09-16712

D.C. Nos.
3:06-cv-04221-
VRW
M:06-cv-01791-
VRW

Studs Terkel, (now deceased);
Barbara Flynn Currie; Diane C.
Geraghty; Gary S. Gerson; James
D. Montgomery; Quentin Young,
on behalf of themselves and all
others similarly situated; American
Civil Liberties Union of Illinois,
Inc.; All Plaintiffs,
                    *Plaintiffs-Appellants,*

                    v.

AT&T Corp.; Illinois Bell
Telephone Co., DBA AT&T
Illinois; United States of
America,
                    *Defendants-Appellees.*

No. 09-16713

D.C. Nos.
3:06-cv-05340-
VRW
M:06-cv-01791-
VRW

Herbert Waxman, on behalf of
himself and all others similarly
situated; All Plaintiffs,
                    *Plaintiffs-Appellants,*

                    v.

AT&T Corp.,
                    *Defendant-Appellee,*

United States of America,
          *Defendant-intervenor-Appellee.*

No. 09-16717

D.C. Nos.
3:06-cv-06294-
VRW
M:06-cv-01791-
VRW

STEVEN LEBOW, Rabbi; STEVEN
BRUNING; CATHY BRUNING; JONNIE
STARKEY; BRIAN BRADLEY; BARRY
KALTMAN; MEREDITH KALTMAN;
ALL PLAINTIFFS,
                    *Plaintiffs-Appellants,*

                    v.

BELL SOUTH CORPORATION;
CINGULAR WIRELESS LLC; SPRINT
NEXTEL CORPORATION; NATIONAL
SECURITY AGENCY,
                    *Defendants-Appellees.*

No. 09-16719
D.C. Nos.
3:07-cv-00464-
VRW
M:06-cv-01791-
VRW

RAY ANDERSON; COLLIN BABER; MARK BARKER; JOHN BARRETT; ANTHONY BARTELEMY; WILLIAM BETZ; FRAN BLAMER; TRUDY BOND; KRISTEN BRINK; SHANE BRINK; MICHAEL BROOKS; PAUL BRUNEY; PETER CATIZONE; STEVE CHRISTIANSON; JOHN CLARK; KINGSLEY CLARK; THOMAS M. CLEAVER; GERARD P. CLERKIN; PETER B. COLLINS; KRIS COSTA; MARK COSTA; JULIE DAVIS; SHARON L. DAVIS; TONI DIDONA; THERESA R. DUFFY; THOMAS S. DWYER; THOMAS MICHAEL FAIN; SHAWN FITZGIBBONS; JOHN FITZPATRICK; JENNIFER FLORIO; MARGARET FRANKLIN; DAWN FURLER; C. GARIFO; DIANE GAVLINSKI; JOSEPH GEHRING; JANE GENTILE-YOUD; MARK GENTILE-YOUD; G. LAWRENCE GETTIER; LINDA GETTIER; LINDA J. GETTIER; JIT GILL; MIKE GILMORE; JAYSON GLEASON; MARC GOLDSTONE; TODD GRAFF; JANET GRANJA; SUSAN GROSSMAN;

No. 09-16720

D.C. Nos.
3:07-cv-02029-
VRW
M:06-cv-01791-
VRW

STEPHANIE GUSTAVE; PAM HADDON;
VERN HADDON; DON HAWKINS;
DONNA HAWKINGS; JOSE V.
HEINERT; LAMAR HENDERSON;
CAROLYN R. HENSLEY; DOUGLAS S.
HENSLEY; DONALD HERRON;
JENNIFER HONTZ; JOYCE JACKSON;
ANDREW JAFFE; RANDEL JAMES;
MICHAEL JOHNSON; DIANE JULIANO;
FAY KAISER; RAJENDRAM KRISHNAN;
BARBARA LANGER; MICHAEL LAVO;
FRED LEAK; KEN LEHA; BEN
LINDSEY; LISA LOCKWOOD; MS.
LODGE; NANCY K. LOREY; MICHAEL
T. LYDA; ELEANOR M. LYNN; ESQ.;
TERRY MANCOUR; CHARLENE MANN;
REV.; JON PAUL MCCLELLAN;
ALICIA MCCOLLUM; JAMES
MCGRATTAN; REV. JOE MCMURRAY;
STEPHANIE MEKET; CLYDE MICHAEL
MORGAN; THEODORE R. MORRIS;
SHERI A. MUELLER; PROF. ROBERT
NEWBY; FRAN NOBILE; SERGE
POPPER; ILENE PRUETT; DR.
MICHAEL REUSCH; MERRILYN ROME;
MICHELE ROSEN; MICHELE S.
ROTHMEL; KEVIN SHAWLER; GREG
L. SMITH; HARRIS SONDAK; JAMES
VANALSTINE; CHRIS VON OBENAUER;

DEADRIA FARMER-PAELLMANN; DAN
PATTON; RAY PENA; CONSTANCE
PHILLIPS; MARK PLANTE; JEREMY
PUHLMAN; MARTIN RAZO; DANIEL
REIMANN; MARK RICHARDS; LINDA
RITHKIS; WILLIAM ROBINETTE; FRED
ROGERS; DARLENE ROGERS;
KATHLEEN ROGERS; WILLIAM J.
ROMANSKY; BRONSON ROSIER; JOSH
SEEFRIED; ANNA F. SHALLENBERGER;
ROYCE SHEPARD; ROBERT SIDEN;
GREGORY L. SMITH; CHRISTIAN
STALBERG; MICHAEL L. STEPHAN;
ROBERT STEWART; DONNA A.
STONE; REGINA SUNBERG; WILLIAM
R. SWEENEY, JR.; DAVID TAYLOR;
APRIL TIPE; ALLEN T. TRADER III;
BARRY W. TRIBBLE; FRED
TRINKOFF; THOMAS VILAR; VICKIE
VOTAW; LEON DWIGHT WALLACE;
ACHIENG WARAMBO; ULRICH
GEISTER; DAVID WHITE; JANE
WINSTON; KEVIN WRIGHT; JOEL
AINGER; CAROL COSE; DEBORAH
DOUGHERTY; JAMES FLYNN; IRENE
KING; PAUL KRAFT; GINA DE
MIRANDA; CATALINA R. THOMPSON;
MARY LEAH WEISS; ELIZABETH
ARNONE; ELEANOR LYNN; JAY H.
ROWELL; DANIEL REIMANN;

VIVIAN PHILLIPS; JEFFREY G.
MARSOCCI; BRIDGET IRVING; JAMES
HALL; JOHN MCINTYRE; BETH
WHITE; BRAD MARSTON; AND PAUL
SUNBERG,
              *Plaintiffs-Appellants,*

                    v.

VERIZON COMMUNICATIONS, INC.;
NATIONAL SECURITY AGENCY;
GEORGE W. BUSH; BELLSOUTH
CORPORATION; AT&T CORPORATION;
AT&T INC.; VERIZON,
              *Defendants-Appellees,*

UNITED STATES OF AMERICA,
       *Defendant-intervenor-Appellee.*

JAMES JOLL; RAMON GOGGINS; IAN
WALKER; JAMES NURKIEWICZ, on
behalf of themselves and all others
similarly situated; ALL PLAINTIFFS,
              *Plaintiffs-Appellants,*

                    v.

AT&T CORP.; AT&T INC.;
VERIZON COMMUNICATIONS, INC.;
BELLSOUTH CORP.; VERIZON,
              *Defendants-Appellees,*

UNITED STATES OF AMERICA,
       *Defendant-intervenor-Appellee.*

No. 09-16723

D.C. Nos.
3:06-cv-05485-
VRW
M:06-cv-01791-
VRW

OPINION

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding

Argued and Submitted
August 31, 2011—Seattle, Washington

Filed December 29, 2011

Before: Harry Pregerson, Michael Daly Hawkins, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

**COUNSEL**

Kevin Stuart Bankston, ELECTRONIC FRONTIER FOUN-
DATION, San Francisco, California; Aram Antaramian,
LAW OFFICE OF ARAM ANTARAMIAN, Berkeley, Cali-
fornia; Richard R. Wiebe, LAW OFFICE OF RICHARD R.
WIEBE, San Francisco, California; Thomas E. Moore, III,
The Moore Law Group, Palo Alto, California, Cindy Cohn,
ELECTRONIC FRONTIER FOUNDATION, San Francisco,
California; Gary Edward Mason and Nicholas A. Migliaccio,
Mason LLP, Washington, District Of Columbia; Michael A.
St. Pierre, Revens Revens & St. Pierre, Warwick, Rhode
Island; Julia Harumi Mass, ACLU FOUNDATION OF
NORTHERN CALIFORNIA, San Francisco, California;
Peter Jay Eliasberg, ACLU FOUNDATION OF SOUTHERN
CALIFORNIA, Los Angeles, California, Vincent Ian Parrett,
MOTLEY RICE LLC, Mt. Pleasant, South Carolina; Roger L.
Mandel, LACKEY HERSHMAN LLP, Dallas, Texas; Marc

R. Stanley, STANLEY MANDEL & IOLA LLP, Dallas, Texas; Michael D. Donovan, DONOVAN, SEARLES, LLC, Philadelphia, Pennsylvania; M. Stephen Turner, Broad & Cassel, Tallahassee, Florida; Gerald Edward Meunier, Gainsburgh Benjamin David Meunier & Warshauer, L.L.C., New Orleans, Louisiana; R. James George, Jr., George & Brothers LLP, Austin, Texas, Val P. Exnicios, Liska Exnicios & Nungesser, New Orleans, Louisiana; Christopher A. Slater, Slater Ross, Portland, Oregon; Brian Hugh Adler, Bader Stillman & Adler PL, Margate, Florida; Sam J. Alton, Stone Leyton Gersham PC, St. Louis, Missouri; Barry Himmelstein, LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, San Francisco, California; Harvey Grossman, Roger Baldwin Foundation of ACLU, Inc., Chicago, Illinois; Clinton A. Krislov, KRISLOV & ASSOCIATED, LTD, Chicago, Illinois; James M. Evangelista, Evangelista & Associates, LLC, Atlanta, Georgia; Carl Mayer, Mayer Law Group LLC, Princeton, New Jersey; Steven Edward Schwarz, The Law Offices of Steven E. Schwarz, Chicago, Illinois, for the plaintiffs-appellants.

Michael Kellogg, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, District Of Columbia, for the defendant-appellee.

Thomas Mark Bondy, DOJ – U.S. Department of Justice, Washington, District Of Columbia, for the defendant-intervenor-appellee.

Howard Merrill Wasserman, FIU COLLEGE OF LAW, MIAMI, Florida, for the Amicus Curiae Law Professors in support of appellees.

**OPINION**

McKEOWN, Circuit Judge:

These consolidated appeals arise from claims that major telecommunications carriers assisted the government with intelligence gathering following the terrorist attacks on September 11, 2001. News reports that the National Security Agency ("NSA") undertook a warrantless eavesdropping program with alleged cooperation by telecommunications companies spawned dozens of lawsuits by customers against the companies, along with multiple suits against the NSA and other government actors. Tash Hepting and other residential telephone customers (collectively "Hepting") challenge the legality of the companies' participation in the surveillance program. Partially in response to these suits, Congress held hearings and ultimately passed legislation that provided retroactive immunity to the companies, subject to various conditions, but expressly left intact potential claims against the government. The sole issue before us is the constitutionality of § 802 of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1885a, known as the FISA Amendments Act of 2008, which allows for immunity for the telecommunication companies. Like the district court, we conclude that § 802 passes constitutional muster.

**BACKGROUND**

**I.   The Lawsuits**

This appeal includes thirty-three actions against the nation's telecommunications companies, originally filed in 2006. The complaints were filed in the wake of news reports in December 2005 that President Bush had issued an order permitting the NSA to conduct warrantless eavesdropping. Under a program known as the Terrorist Surveillance Program ("TSP"), the NSA "had obtained the cooperation of telecommunications companies to tap into a significant portion of

the companies' telephone and e-mail traffic, both domestic and international." James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 16, 2005, at A1. The President later acknowledged that in the weeks following September 11, he authorized a "terrorist surveillance program to detect and intercept al Qaeda Communications" and stated that the program applied "only to international communications, in other words, [where] one end of the communication [was] outside the United States." President George W. Bush, Speech at the National Security Agency (Jan. 25, 2006) *available at* http://georgewbush-whitehouse.archives.gov/news/releases/2006/01/20060125-1.html. The complaints "challenge[d] the legality of Defendants' participation in a secret and illegal government program to intercept and analyze vast quantities of Americans' telephone and Internet communications." Hepting alleged that the telecommunications companies provided the government with direct access to nearly all of the communications passing through their domestic telecommunications facilities. These suits were consolidated in August 2006 in the Northern District of California under the multidistrict litigation ("MDL") provisions of 28 U.S.C. § 1407. Although not a defendant in these suits, the United States intervened to seek dismissal under § 802 of the FISA.

## II.   The 2008 Amendments to the FISA

While the underlying actions were pending in district court, and partially in response to these suits, Congress enacted the FISA Amendments Act of 2008, Pub. L. No. 110-261, 122 Stat. 2435, codified at 50 U.S.C. § 1885a. Among the amendments is § 802, an immunity provision and related procedures that are triggered if the United States Attorney General certifies to one or more of five conditions. In such case, no civil action may be maintained "against any person for providing assistance to an element of the intelligence community." § 802(a).

This amendment dovetails with an existing comprehensive statutory framework that grants the Executive Branch authority to enlist telecommunications companies for intelligence gathering, to protect those companies from suit, and to keep their efforts secret. Acknowledging the existing legislation, Congress deemed an amendment necessary to empower the Attorney General to immunize from suit telecommunications companies that had cooperated with the government's intelligence gathering, including post-September 11 activities under the TSP.

Subsection 802(a) reads as follows:

(a) Requirement for certification. Notwithstanding any other provision of law, a civil action may not lie or be maintained in a Federal or State court against any person for providing assistance to an element of the intelligence community, and shall be promptly dismissed, if the Attorney General certifies to the district court of the United States in which such action is pending that—

(1) any assistance by that person was provided pursuant to an order of the court established under section 103(a) [50 U.S.C. § 1803(a)] directing such assistance;

(2) any assistance by that person was provided pursuant to a certification in writing under section 2511(2)(a)(ii)(B) or 2709(b) of title 18, United States Code;

(3) any assistance by that person was provided pursuant to a directive under section 102(a)(4) [50 U.S.C. § 1802(a)(4)], 105B(e) [50 U.S.C. § 1805b(e)], as added by section 2 of the Protect America Act of 2007 (Public Law 110-55), or 702(h) [50 U.S.C. § 1881a(h)] directing such assistance;

(4) in the case of a covered civil action, the assistance alleged to have been provided by the electronic communication service provider was—

    (A) in connection with an intelligence activity involving communications that was—

        (i) authorized by the President during the period beginning on September 11, 2001, and ending on January 17, 2007; and

        (ii) designed to detect or prevent a terrorist attack, or activities in preparation for a terrorist attack, against the United States; and

    (B) the subject of a written request or directive, or a series of written requests or directives, from the Attorney General or the head of an element of the intelligence community (or the deputy of such person) to the electronic communication service provider indicating that the activity was—

        (i) authorized by the President; and

        (ii) determined to be lawful; or

(5) the person did not provide the alleged assistance.

Section 802(a) permits the Attorney General to certify to a court that assistance was provided under at least one of a series of situations—ranging from a Foreign Intelligence Surveillance Court order, a national security letter, an Attorney General directive regarding FISA-authorized warrantless surveillance to participation in the TSP—or that no assistance was provided. This certification is subject to judicial review under a substantial evidence standard: "[a] certification under subsection (a) shall be given effect unless the court finds that

such certification is not supported by substantial evidence provided to the court pursuant to this section." § 802(b)(1).

Section 802(c) details the court's handling of classified information. If the Attorney General declares that public disclosure of the certification and related materials "would harm the national security of the United States," then the court must review the material *ex parte* and *in camera*. The court may not reveal the specific subsection under which the certification was made nor may the court reveal any such material. Instead, the court must simply state whether the case is dismissed and a description of the legal standards governing the order.

Finally, § 802(d) provides that

> [a]ny plaintiff or defendant in a civil action may submit any relevant court order, certification, written request, or directive to the district court referred to in subsection (a) for review and shall be permitted to participate in the briefing or argument of any legal issue in a judicial proceeding conducted pursuant to this section, but only to the extent that such participation does not require the disclosure of classified information to such party.

All classified materials must be reviewed *in camera* and *ex parte* and any part of the court's order reviewing such information must be under seal.

The Senate Select Committee on Intelligence issued a report on the amendments, discussing, among other provisions, § 203, which was later codified as the FISA § 802. *See* S. Rep. 110-209 (2007). The report contains a lengthy background section describing "Pending Litigation" and "Civil Suits Against Electronic Communication Service Providers," leaving little doubt that these cases were among the intended targets of the amendments.

The new immunity provision "reflect[ed] the Committee's belief that there is a strong national interest in addressing the extent to which the burden of litigation over the legality of surveillance should fall on private parties." *Id.* at 8. The Committee noted the "importance of the private sector in security activities." *Id.* at 5. It emphasized that electronic intelligence gathering depends in great part on cooperation from private companies, *id.* at 9, and that if litigation were allowed to proceed against persons allegedly assisting in such activities, "the private sector might be unwilling to cooperate with lawful Government requests in the future." *Id.* at 10. The "possible reduction in intelligence that might result . . . is simply unacceptable for the safety of our Nation." *Id.* The Committee pointed to the pending suits, including this one, noting that "even if these suits are ultimately dismissed on state secrets or some other grounds, litigation is likely to be protracted." *Id.* at 7. Thus Congress explicitly crafted § 802 to allow for the dismissal of cases against telecommunications companies.

## III.   The Attorney General's Certification under § 802

Shortly after § 802(a) became law, Attorney General Michael Mukasey submitted to the district court both a public and a classified certification under the statute. In his public declaration, Attorney General Mukasey "confirm[ed] the existence of the TSP" but "denied the existence of the alleged dragnet." He "certif[ied] that the claims asserted in the civil actions pending in these consolidated proceedings brought against electronic communication service providers fall within at least one provision contained in Section 802(a) of the FISA." He further explained that disclosure of the classified certification "would cause exceptional harm to the national security of the United States" and "must therefore be reviewed *in camera*, *ex parte* by the Court" pursuant to § 802(c)(2). Mukasey concluded that "the provider-defendants are entitled to statutory protection based on at least one of the provisions contained in Section 802(a)(1) to (5) of

the FISA, which includes the possibility that a provider defendant did not provide any assistance."

## IV.   The District Court Decision

With the filing of the Attorney General's certification, the United States intervened and moved to dismiss all of the claims against the telecommunications companies. The district court granted the motion and dismissed the complaints. *Al-Haramain Islamic Found., Inc. v. Bush (In re NSA Telcomms. Records Litig.)*, 633 F. Supp. 2d 949, 955 (N.D. Cal. 2009).

In a thoughtful and lengthy opinion, the district court characterized § 802 as "sui generis among immunity laws."*Id.* at 959. The district court considered Hepting's multiple claims "that constitutional defects make the statute unenforceable." *Id.* at 959-60. In the end, the district court rejected each of these claims.

Hepting also made "a series of arguments to the effect that, on the merits and putting alleged infirmities in section 802 aside, the Attorney General's certifications are inadequate under section 802's own terms to support dismissal of these actions." *Id.* at 975. In support of these claims, Hepting pointed to specific evidence offered with respect to the surveillance. Unpersuaded, the district court wrote as follows:

> While plaintiffs have made a valiant effort to challenge the sufficiency of certifications they are barred by statute from reviewing, their contentions under section 802 are not sufficiently substantial to persuade the court that the intent of Congress in enacting the statute should be frustrated in this proceeding in which the court is required to apply the statute. The court has examined the Attorney General's submissions and has determined that he has met his burden under section 802(a).

*Id.* at 976.

## ANALYSIS

On appeal, Hepting challenges only the facial constitutionality of § 802, not its application. He does not appeal the district court's determination that the substance of the Attorney General's certifications (both classified and unclassified) was supported by substantial evidence and that the Attorney General met his statutory burden. As a consequence, our legal analysis is not dependent on the details contained within the certifications.[1]

Three of Hepting's arguments focus on separation of powers: (1) bicameralism and presentment; (2) nondelegation; and (3) congressional interference with litigation. The fourth claim, which draws upon separation of powers and due process, is that the statute effectively forecloses litigation of the claims. Finally, Hepting characterizes his claims as a property interest and seeks relief under the Due Process Clause of the Fifth Amendment for deprivation of an opportunity to be heard before an unbiased adjudicator and of his right to meaningful notice in light of the statutory secrecy provisions.

## I.   Separation-of-Powers Challenges

### A.   Bicameralism and Presentment

**[1]** We first consider whether, in view of the requirements of bicameralism and presentment found in Article I, § 7 of the Constitution, § 802 effectively amends or negates existing law without going through the constitutionally-mandated legislative process. Relying primarily on *Clinton v. City of New*

---

[1]The district court considered both the public and classified certifications. Because this appeal raises only the constitutionality of § 802 and not its specific application in this case, we need not consider the classified materials.

*York*, 524 U.S. 417 (1998), in which the Supreme Court struck down the Line Item Veto Act as unconstitutional, Hepting correctly asserts that "[a]mendment and repeal of statutes, no less than enactment, must conform with Art[icle] I." *INS v. Chadha*, 462 U.S. 919, 954 (1983). Similarly, there is no "provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Clinton*, 524 U.S. at 438. Hepting's argument fails, however, because in enacting § 802, Congress did not give the Executive the power to enact, amend or repeal a statute.

In *Clinton*, the Supreme Court characterized the Line Item Veto Act as giving "the President the power to 'cancel in whole' " tax and spending provisions that had been passed by both houses of Congress and signed into law. *Id.* at 436 (citation omitted). The line item veto prevented the cancelled items "from having legal force or effect," though the remaining provisions "continue[d] to have the same force and effect as they had when signed into law." *Id.* at 437-38. The Court concluded "that cancellations pursuant to the Line Item Veto Act are the functional equivalent of partial repeals of Acts of Congress that fail to satisfy Article I, § 7." *Id.* at 444.

**[2]** Hepting argues that § 802 is similar to the Line Item Veto Act because the Executive may partially repeal or pre-empt the law governing electronic surveillance on a case-by-case basis by certifying to one of the five circumstances set forth in § 802(a). This argument glosses over a crucial distinction between § 802 and the Line Item Veto Act: Under § 802 the Executive does not *change or repeal* legislatively enacted law, as was the case with the Line Item Veto. The law remains as it was when Congress approved it and the President signed it. In other words, nothing effected by the Attorney General "prevent[s] the item from having legal force or effect." *Clinton*, 524 U.S. at 437 (internal quotation marks omitted). Unlike the line item veto, the Attorney General's certification implements the law as written and does not frustrate or change the law as enacted by Congress.

**[3]** Through the amendment to the FISA, Hepting's causes of action are now subject to an additional statutory defense. As a practical matter, a discretionary decision by the Attorney General that invokes a defense or immunity hardly represents an impermissible statutory repeal. It is not uncommon for executive officials to have authority to trigger a defense or immunity for a third party. The United States Code is dotted with statutes authorizing comparable executive authority.[2] For example, executive officials regularly grant immunity from the fruits of compelled testimony in criminal prosecutions. *See* 18 U.S.C. § 6003; *see also* 28 U.S.C. § 2679(d) (allowing the government to trigger immunity by certifying that a defendant is acting within the scope of federal employment); *cf. Republic of Iraq v. Beaty*, ___ U.S. ___, 129 S. Ct. 2183, 2192 (2009) (A provision of the emergency Wartime Supplemental Appropriations Act "did not repeal anything, but merely granted the President authority to waive the application of particular statutes to a single foreign nation." (citing *Clinton*, 524 U.S. at 443-45)); *Chadha*, 462 U.S. at 953 n.16 (noting that the Attorney General's discretionary authority under the INA to suspend removal does not implicate Article I, § 7). An executive grant of immunity or waiver of claim has never been recognized as a form of legislative repeal. Section 802 thus does not violate the bicameralism and presentment requirements of Article I, § 7.

## B.   The Nondelegation Doctrine

**[4]** The nondelegation doctrine is central to the notion of separation of powers. *See Mistretta v. United States*, 488 U.S. 361, 371 (1989) ("The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite

---

[2]The Brief of the Amici Law Professors includes an appendix that contains a laundry list of "Selected Statutes Authorizing Executive Branch Officials to Waive Existing Laws in Certain Circumstances" ranging from the Intelligence Authorization Act, 21 U.S.C. § 1903(g)(1), to the Protect our Children Act of 2008, 42 U.S.C. § 17616(a)(3)(C).

system of Government."). The Supreme Court has only twice invalidated legislation under this doctrine, the last time being seventy-five years ago.

**[5]** Article I, § 1 of the Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." In practice, of course, Congress delegates authority frequently. The relevant question is how, when, and under what circumstances Congress may delegate its authority. The Supreme Court's answer: "[W]hen Congress confers decisionmaking authority upon agencies Congress must lay down by legislative act an intelligible principle to which the person or body authorized to act is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (emphasis and internal quotation marks omitted). "Only if [a court] could say that there is an absence of standards for the guidance of the Administrator's action, so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed, would [it] be justified in overriding its choice of means for effecting its declared purpose . . . ." *Yakus v. United States*, 321 U.S. 414, 426 (1944).

In applying the intelligible principle test to congressional delegations, the Supreme Court "has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta*, 488 U.S. at 372. The Court summed up its nondelegation jurisprudence as follows: "[I]n the history of the Court we have found the requisite 'intelligible principle' lacking in only two statutes, one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.' " *Whitman*, 531 U.S. at 474 (citing *Panama Refining Co. v. Ryan*, 392 U.S. 388 (1935); *A.L.A. Schechter*

*Poultry Corp. v. United States*, 295 U.S. 495 (1935)). The text, structure, history, and context of § 802 together demonstrate the existence of an intelligible principle.

Hepting argues that § 802 contravenes the nondelegation doctrine because Congress imposed no standard or intelligible principle governing the Attorney General's certification authority. The text of § 802 sets out five statutory categories —ranging from the specific TSP program to the fact that no assistance was provided—that delineate and circumscribe the Attorney General's certification discretion. Hepting faults the legislation because it lacks guidance on *whether* the Attorney General should exercise his discretion. In our view, the Attorney General's discretion *whether* to invoke a specific subsection does not eviscerate the "intelligible principle" standard.

A review of standards upheld by the Court underscores the concrete and intelligible nature of the text of § 802. For example, the Court has countenanced as intelligible seemingly vague principles in statutory text such as whether something would "unduly or unnecessarily complicate," or be "generally fair and equitable," in the "public interest," or "requisite to protect the public health." *Whitman*, 531 U.S. at 474-76*; Am. Power & Light Co. v. SEC*, 329 U.S. 90, 104 (1946); *Yakus*, 321 U.S. at 420; *Nat'l Broadcasting Co. v. United States*, 319 U.S. 190, 225-26 (1943). Statutes authorizing the recovery of "excessive profits," and allowing action when "necessary to avoid an imminent hazard to public safety" also passed the test. *Touby v. United States*, 500 U.S. 160, 166 (1991); *Lichter v. United States*, 334 U.S. 742, 778-79 (1948). The Supreme Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Whitman*, 531 U.S. at 474-75 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)). Indeed, the "hazard to public safety" provision in *Lichter* is comparable to, if not less specific than, the "designed to detect or prevent a terrorist attack" language in § 802(4)(4). Never has the Court invali-

dated a law simply because the Executive has the discretion to act.

Section 802's structure resembles that of similar statutes that have been found valid. When considering the state-sponsored terrorism exception to the FISA, the D.C. Circuit explained that "Congress delineated the area of immunity and the exception to the immunity, delegating to the Executive only the authority to make a factual finding upon which the legislatively enacted statute and the judicially exercised juris-diction would partially turn." *Owens*, 531 F.3d at 889. The same is true regarding § 802. Congress created liability under the FISA, as well as the immunity exception for private com-panies, under certain circumstances. And Congress delegated to the Executive the authority to trigger this immunity. *See infra* Part III.A.

The legislative history also confirms our textual analysis of the statute. In the context of nondelegation, the Supreme Court has emphasized the role of legislative history, even absent ambiguity in the statute. *See Mistretta*, 488 U.S. at 376 n.10 ("[L]egislative history, together with Congress' directive that the Commission begin . . . by ascertaining the average sentence imposed in each category in the past, and Congress' explicit requirement that the Commission consult with author-ities in the field of criminal sentencing provide a factual back-ground and statutory context that give content to the mandate of the Commission." (citing *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 104-05 (1946))).

Following *Mistretta*, the D.C. Circuit also noted that when the court reviews statutes under the nondelegation doctrine, the court "do[es] not confine [itself] to the isolated phrase in question, but utilize[s] all the tools of statutory construction, including the statutory context and, when appropriate, the fac-tual background of the statute to determine whether the statute provides the bounded discretion that the Constitution

requires." *Owens v. Republic of the Sudan*, 531 F.3d 884, 890 (D.C. Cir. 2008). In short, context matters.

The Senate Select Committee Report goes far in explaining the congressional concerns that motivated the passage of the immunity provision. When considering how to respond to lawsuits like this one, the Committee "recogniz[ed] the importance of the private sector in assisting law enforcement and intelligence officials in critical criminal justice and national security activities." S. Rep. 110-209 at 5. The Report further states that "electronic surveillance for law enforcement and intelligence purposes depends in great part on the cooperation of the private companies that operate the Nation's telecommunication system." *Id.* at 9. The intelligible principle that comes through in the legislative history is one of protecting intelligence gathering and national security information.

The fact that § 802 arises within the realm of national security—a concern traditionally designated to the Executive as part of his Commander-in-Chief power—further suggests that the intelligible principle standard need not be overly rigid. *See* U.S. Const. art. II, § 2, cl. 1; *see also Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (noting "constitutional investment of power [over national security] in the President" that "exists quite apart from any explicit congressional grant"). The Supreme Court has repeatedly underscored that the intelligible principle standard is relaxed for delegations in fields in which the Executive has traditionally wielded its own power. *See, e.g.*, *Loving*, 517 U.S. at 772 (military affairs); *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 324 (1936) (foreign relations); *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1421, 1438 (9th Cir. 1996) (same).

**[6]** Section 802 authorizes the Attorney General to act only in narrow, definable situations, subject to review by the courts. In sum, the text, structure, history, and context of § 802 contain an intelligible principle consistent with the Constitution's nondelegation doctrine.

## C. No Congressional Interference with Adjudication

Hepting asserts that § 802 offends the doctrine of separation of powers because it is a legislative incursion upon the judicial branch. He claims that judicial review under § 802 "is deferential to the point of meaninglessness," taking issue with the "substantial evidence" standard of review. To support his argument, Hepting cites only two cases, neither of which illuminates his point, but instead contain broad pronouncements on the proper role of the judiciary.

Hepting invokes *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995). But he does well not to dwell on this case because the Supreme Court in *Plaut* struck down a very different statute—one that "require[d] federal courts to reopen final judgments in private civil actions." *Id.* at 213. When compared to *Plaut*, where Congress "attempted to set aside the final judgment of an Article III court by retroactive legislation," 514 U.S. at 230, Hepting's separation of powers claim as to § 802 is weak indeed. Nor does *Crim v. Handley*, 94 U.S. 652, 657 (1876), bolster Hepting's argument. He cites it only for the general proposition that courts review criminal trials for errors of law, but *Crim* discusses the Seventh Amendment and does not implicate Article III powers.

**[7]** On the other hand, there is a long line of cases upholding deferential standards of review for administrative factual determinations in other statutory schemes. *See, e.g.*, *Dickinson v. Zurko*, 527 U.S. 150, 152-61 (1999) (rejecting clearly erroneous standard and reaffirming substantial evidence standard of review for agency findings); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490 (1951) (stating that substantial evidence review is sufficient to fulfill the conventional judicial function); *Bonnichsen v. United States*, 367 F.3d 864, 879-80 (9th Cir. 2004) ("We review the full agency record to determine whether substantial evidence supports the agency's decision."); *Retlaw Broad. Co. v. NLRB*, 53 F.3d 1002, 1006 (9th Cir. 1995) ("Credibility determinations by the ALJ are

given great deference, and are upheld unless they are 'inherently incredible or patently unreasonable.' ") (citing *Local 512, Warehouse & Office Workers v. NLRB*, 795 F.2d 705, 712 (9th Cir. 1986)).

[8] Deferential review does not mean that courts abdicate their judicial role. Section 802 does not represent a legislative incursion into the independent decisionmaking and reviewing authority of the courts. Given the judiciary's long history and experience with reviewing cases for substantial evidence, review under § 802 is neither "partial" nor "meaningless" as Hepting urges.

## II.   Separation of Powers and Due Process Challenges to Claims Limitation

[9] Hepting claims § 802 forecloses a challenge to the government's wiretapping program, thus violating due process and separation of powers under Article III. Although Congress granted immunity to private parties that assisted the government, § 802 does not foreclose relief against government actors and entities who are the primary players in the alleged wiretapping. Hepting retains an independent judicial avenue to address these claims.[3]

The Senate Report confirms this reading. "Only civil lawsuits against electronic communication service providers alleged to have assisted the Government are covered under this provision. The Committee does not intend for this section to apply to, or in any way affect, pending or future suits against the Government as to the legality of the President's

---

[3]As the district court pointed out, "the same plaintiffs who brought the *Hepting v. AT&T* lawsuit . . . are now actively prosecuting those claims in a separate suit . . . against government defendants. *Al-Haramain*, 633 F. Supp at 960. Notably, Hepting has a separate proceeding pending against the government. *See Jewel v. NSA*, No. 08-4373 (N.D. Cal., filed Sept. 18, 2008).

program." S. Rep. 110-209 at 8. The Committee determined that "narrowly circumscribed civil immunity should be afforded to [cooperating] companies." *Id.* at 3. The report continues, describing § 802 as "establish[ing] procedures by which civil actions against those who assist the Government shall be dismissed." *Id.* at 10-11. Congress did not prohibit adjudication of Hepting's claims, it simply limited the universe of responsibility to government defendants.

**[10]** To be sure, a "serious constitutional question . . . would arise if a federal statute were construed to deny *any judicial forum* for a colorable claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (emphasis added). Separation of powers concerns would be raised because "the appellant would have *no forum at all* for the pursuit of her claims" and the court "would thus be faced with a situation in which Congress has enacted legislation and simultaneously declared that legislation to be immune from any constitutional challenge by the plaintiff." *Bartlett v. Bowen*, 816 F.2d 695, 703 (D.C. Cir. 1987). Such is not the situation here. The federal courts remain a forum to consider the constitutionality of the wiretapping scheme and other claims, including claims for injunctive relief. The judiciary's essential role in protecting constitutional rights is not undermined simply because Hepting is unable to bring twin claims against the telecommunications companies and the government.

## III. Section 802 Does Not Violate Due Process

Hepting's final argument—that § 802's certification and review procedures deprive him of liberty and property interests without sufficient process—rests on the Due Process Clause of the Fifth Amendment. Hepting identifies his causes of action against the telecommunications companies as the property right at issue. We assume, without deciding, that he

has such a right, even if minimal, as it does not affect the ultimate outcome of the appeal.[4]

Hepting's due process argument is twofold. He argues first that the Attorney General's certification is an adjudication that denies claimants a *de novo* review before an unbiased adjudicator. He then claims that the procedures under § 802 deny him meaningful notice of the government's basis for certification.

## A.   The Attorney General Was Not an Adjudicator

[11] Hepting's initial complaint is that the Attorney General acts as a biased adjudicator when certifying immunity. But Hepting's focus on the role of the Attorney General misapprehends the certification process. The Attorney General certifies either that assistance was provided in narrowly defined circumstances or that no assistance was offered. In this capacity, the Attorney General does not function as an adjudicator. *See Owens*, 531 F. 3d at 891-92 (citing cases and describing executive decision making in the context of foreign affairs as "factfinding"). Mere certification, which is the foundation of immunity under § 802, is not tantamount to an adjudication.

The fact that the Attorney General may have supported the

---

[4]The parties disagree as to when a cause of action becomes a property right protected by the due process clause. *Compare Lujan v. G & G Fire Sprinklers*, 532 U.S. 189, 195 (2001) ("assum[ing], without deciding," that a "claim for payment under [specified] contracts" was a property interest), *and Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause"), *with Lyon v. Agusta,* 252 F.3d 1078, 1086 (9th Cir. 2001) (holding that "a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained.") (*citing Grimsey v. Huff,* 876 F.2d 738, 743-44 (9th Cir. 1989)), *and Fields v. Legacy Health System,* 413 F.3d 943, 956 (9th Cir. 2005) (same). We need not resolve this issue because § 802 provides sufficient process.

legislation to amend the FISA has no legal import in this context. Hepting views Attorney General Mukasey as operating under "a structural, institutional bias" because he served during the Bush Administration, which advocated for the legislation, and was counsel to the United States in these lawsuits. He follows with the claim that Mukasey "had an actual bias in this matter," because he stated publicly that the immunity provision was "important" and that immunity represented "a fair and just result," and also conveyed this opinion to members of Congress.

**[12]** Hepting ignores that the Attorney General has a legitimate policy role. It is well established that "[a]dministrators . . . may hold policy views on questions of law prior to participating in a proceeding." *Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1174 (D.C. Cir. 1979) (quoted in *United States v. Payne*, 944 F.2d 1458, 1476-77 (9th Cir. 1991)); *see also FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948) (rejecting a due process claim where agency head previously expressed a view on the issue); *Fidelity Television, Inc. v. FCC*, 515 F.2d 684, 694 (D.C. Cir. 1975) (rejecting bias argument based on prior Commission decisions and Chairman's testimony before Congress). Public officials are presumed not to be biased; expressing an opinion, even a strong one, on legislation, does not disqualify an official from later responding to a congressional mandate incorporating that opinion. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The ultimate legislative judgment regarding immunity for the telecommunications companies was made by Congress, not the Attorney General, and falls to the courts, not the Attorney General, to review.

## B.    Section 802 Provides Sufficient Notice and Process

The question we next address is whether the judicial review procedures under § 802 satisfy the Due Process Clause. Under § 802(a), no claim may be brought against any person providing certain categories of assistance, as certified by the Attorney General. If the Attorney General files a declaration that

disclosure of his certification or any supplemental materials "would harm the national security of the United States, the court shall . . . review such certification and supplemental materials *in camera* and *ex parte*." § 802(c). "[A]ny public disclosure concerning such certification and the supplemental materials [is limited] . . . to a statement as to whether the case is dismissed and a description of the legal standards that govern the order," without disclosing the specific subsection of the certification. *Id*.

In targeting § 802, Hepting challenges only a narrow subset of the statutory provisions that render the proceedings secret. Two important points bear noting: the requirements of § 802 piggyback on a preexisting framework of secrecy statutes not challenged by Hepting; and the scope of the § 802 certification is itself narrow.

**[13]** The FISA amendments essentially left untouched the basic framework of statutes that already provide broad protection of the secrecy of court orders and certifications that rest on national security materials. These statutes range from certification provisions under the Wiretap Act, 18 U.S.C. § 2511(2)(a)(ii)(B), to authorization for telecommunication companies' provision of information under the Electronic Communications and Security Act, 18 U.S.C. § 2709(b). Where Hepting references these underlying provisions, he characterizes them as constitutional in contrast to the alleged unconstitutionality of § 802. The amendment that Hepting objects to was enacted

> [b]ecause the Government has claimed the state secrets privilege over the question of whether any particular provider furnished assistance to the Government, [and thus] an electronic communication service provider who cooperated with the Government pursuant to a valid court order or certification cannot prove it is entitled to immunity under section

2511(2)(a)(ii) without disclosing the information deemed privileged by the Executive branch.

S. Rep. 110-209 at 11. In other words, the amendment was adopted to effectuate a pre-existing immunity for telecommunications companies.

**[14]** Hepting's challenge is simply to the extra layer of secrecy provided by § 802 which precludes him from knowing the precise statutory subsection relied on by the Attorney General in the certification. Hepting does not take aim at the underlying provisions which, standing alone, allow for the wiretapping, immunity, and *in camera* proceedings. Thus, § 802 only marginally refines and limits the notice available to a potential claimant.[5]

Next, the practical effects of § 802's additional constraints on notice are limited. The statute lays out the five grounds for certification. Hepting has notice that the foundation of the certification rests on one of those grounds, and may challenge any or all of them even when the Attorney General does not publicly disclose the exact ground.

---

[5]For example, certification under § 802(a)(1) means that "any assistance by that person was provided pursuant to an order of the court established under section 103(a) [50 U.S.C. § 1803(a)] directing such assistance." The cited statute creates the authority for the FISA courts. 50 U.S.C. § 1803(a). The FISA court orders and proceedings are already secret, *id.* 1803(c), and entirely independent of the challenged *in camera* provisions in § 802. Thus, certification under § 802(a)(1) would mean that the party being granted immunity acted pursuant to an already secret FISA court order. Likewise, certification under § 802(a)(2) invokes either the Wiretap Act, which authorizes telecommunications companies to provide the government with aid in eavesdropping under certain, narrow circumstances, and provides for secrecy and immunity, 18 U.S.C. § 2511(2)(a)(ii)(B), or the Electronic Communications and Privacy Act, which requires telecommunications companies to provide information to law enforcement and to keep secret their assistance. 18 U.S.C. § 2709. Certification under § 802(a)(3) invokes provisions of the FISA that already have secrecy and immunity clauses.

The grounds of certification do not require complex analysis. The first three subsections of § 802(a) invoke a binary determination (yes or no) of whether the person provided assistance under the specific laws listed. § 802(a)(1)-(3).

The fourth subsection, § 802(a)(4), the most lengthy of the provisions, covers the widely reported TSP program, whose existence was acknowledged by the President, and, at this stage, has been much discussed and reported. S. Rep. 110-209 at 1; David Sanger & John O'Neil, *White House Begins New Effort to Defend Surveillance Program, Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Jan. 23, 2006; *see also Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007). Under subparagraph four, immunity is dependent on assistance under the TSP along with additional requirements, including that the assistance was "designed to detect or prevent" a terrorist attack. The activity must have been documented in writing and "authorized by the President" or "determined to be lawful."

Finally, certification under § 802(a)(5) can only mean that the party being immunized "did not provide the alleged assistance." This too is binary. If assistance was provided, immunity is available. Absent such assistance, a plaintiff would have no claim in any event. As the Senate Report describes it, § 802(a)(5) "provides a procedure . . . to seek dismissal of a suit when a defendant either provided assistance pursuant to a lawful statutory requirement, or did not provide assistance." S. Rep. 110-209 at 11.

Section 802's limited effect on Hepting's ability to challenge the grounds for certification stands in marked contrast to the statute considered in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004). Hepting cites *Hamdi* to urge that the secrecy provisions in § 802 deprive him of due process because he has no "notice of the factual basis" of the government's claim. 542 U.S. at 533 (plurality opinion); That case involved the power of the Executive to indefinitely detain a citizen on unspecified

criminal charges; Hamdi had no notice at all of the evidence arrayed against him. *Id.* at 509-15. In this civil case, however, Hepting is on notice of the limited universe of situations that could justify certification. He has the opportunity to provide evidence and arguments as to why certification or immunity is not justified under each scenario. Indeed, the procedures under § 802(c) are not fully *ex parte*—any party may participate in the briefing or argument challenging the certification and grant of immunity, "but only to the extent that such participation does not require the disclosure of classified information to such party." § 802(d). The government noted at oral argument that Hepting is "free if [he] want[s] to submit to the district court public information that [he] believe[s] supports [his] claim, and [he has] done so—hundreds and hundreds of pages." Oral Argument at 52:36-45. These hundreds of pages of evidence, including books, television interviews, government reports and documents from the Director of National Intelligence, are nicely catalogued in Hepting's Rule 1006 Summary of Voluminous Evidence.

**[15]** Finally, the national security considerations present here successfully outweigh the limited effects of § 802 on the scope of the notice Hepting receives and his ability to challenge the Attorney General's certification. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Courts have consistently upheld *in camera* and *ex parte* reviews when national security information is concerned. In *National Council of Resistance of Iran v. Dep't of State*, the D.C. Circuit explained that the notice "need not disclose the classified information to be presented *in camera* and *ex parte* to the court under the statute. This is within the privilege and the prerogative of the Executive, and we do not intend to compel a breach in the security which that branch is charged to protect." 251 F.3d 192 (D.C. Cir. 2001). The court conducted a detailed analysis of the interests at stake under the

traditional balancing test for procedural due process claims, *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and definitively upheld the congressionally-approved *in camera* and *ex parte* proceedings. 251 F.3d at 206-08 (considering Secretary of State's designation of two foreign entities as foreign terrorist organizations under *in camera* and *ex parte* provisions of the Antiterrorism and Effective Death Penalty Act, 8 U.S.C. § 1189).

Hepting's claim mirrors the one made—and rejected—in *People's Mojahedin Organization of Iran v. Department of State*: that a statute violates the Due Process Clause because it "permits the Secretary to rely upon secret evidence—the classified information that respondent refused to disclose and against which [the petitioner] could therefore not effectively defend." 327 F.3d 1238, 1241-42 (D.C. Cir. 2003) (rejecting a due process challenge to a designation as a terrorist organization). Similarly, in *Holy Land Foundation for Relief & Development v. Ashcroft*, the court held that the petitioner's designation as a "Specially Designated Global Terrorist" using classified information reviewed by the court *in camera* and *ex parte* did not violate due process for lack of meaningful notice. 333 F.3d 156, 164 (D.C. Cir. 2003); *see also Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) ("Administration of the IEEPA is not rendered unconstitutional because that statute authorizes the use of classified evidence that may be considered *ex parte* by the district court." (citing 50 U.S.C. § 1702(c)).

To counter this line of cases Hepting relies on *American-Arab Anti-Discrimination Committee v. Reno* ("*AADC*"), in which we held that the use of undisclosed classified information in adjustment-of-immigration-status proceedings violated due process. 70 F.3d 1045, 1070 (9th Cir. 1995). The circumstances in *AADC* could hardly diverge more. Most significantly there was "no statutory or regulatory basis supporting" *in camera* process, *id.* at 1068; under § 802, Congress sanctioned *in camera* and *ex parte* procedures. Another significant

distinction: the government in *AADC* offered no evidence to demonstrate the threat to national security posed by the individuals against whom it sought to use the *in camera* and *ex parte* information. *Id.* at 1169. Here Congress itself expressed the seriousness of the national security interests at stake, *see* S. Rep. 110-209 at 9, and the Attorney General explicitly declared "that disclosure of [the] classified certification, including the basis of [the] certification, for particular provider defendants, would cause exceptional harm to the national security of the United States." Finally, in *AADC*, the government "[did] not seek to shield state information from disclosure in the adjudication of a tort claim against it; instead, it [sought] to use secret information as a sword against the aliens." 70 F.3d at 1070. *AADC* is thus instructive because it represents the striking contrast between a court process unhinged to specific standards and statutes in the immigration context and § 802's certification process crafted for specific national security reasons and subject to judicial review.

The government's invocation of national security concerns does not guarantee it a free pass. When enacting § 802, Congress was mindful to preserve and even expand the essential role of the courts. The Senate Report explained that:

> The procedure in [§ 802] allows a court to review a certification . . . even when public disclosure of such facts would harm the national security. Because an assertion of state secrets over the same facts would likely prevent all judicial review . . . this provision serves to expand judicial review to an area that may have been previously non-justiciable. In addition, the statute explicitly allows the court to review . . . the Attorney General's certification.

S. Rep. 110-209 at 12. The certification is reviewed for "substantial evidence." § 802(b)(1); *cf. Hamdi*, 542 U.S. at 527 (using a more deferential "some evidence" standard). The

statute envisions a meaningful role for the courts, as exemplified by the careful and detailed work of the district court in this case.

**[16]** Accordingly, we conclude that the procedures afforded under § 802 are sufficient under the Due Process Clause. Given the circumstances dictated by national security concerns, the statute provides sufficient notice of a range of grounds for immunity from suit and provides meaningful judicial review based on substantial evidence. The public evidence is, of course, provided to all parties; the courts may review any sealed evidence *in camera* to assure that there is a legitimate national security interest and to review the certification and its accompanying evidence under the substantial evidence standard.

## IV.   Issues Specific to Joll, Anderson, Herron, and Lebow

**[17]** Four appellants, Joll, Anderson, Herron, and Lebow, filed complaints alleging conduct that began as far back as February 2, 2001, predating the TSP program. In its dismissal of their actions, the district court stated that because "section 802's immunity provision may only be invoked with regard to suits arising from actions authorized by the president between September 11, 2001 and January 7, 2007, the dismissal is without prejudice." *Al-Haramain*, 633 F. Supp. 2d at 976. Unlike the district court, we conclude that § 802's immunity provisions are not temporally limited; only § 802(a)(4), which references the TSP, contains a temporal limitation. The district court did not err by dismissing these four appellants' pre-September 11, 2001 claims.

**[18]** In addition to claims against the private telecommunications companies, the complaints filed by Anderson and Lebow also included alleged illegal conduct on the part of the government. Because § 802 does not apply to claims against the government, the district court erred in dismissing these claims. We reverse and remand with respect to Anderson and

Lebow's claims against the government for further consideration by the district court.

## CONCLUSION

Although Hepting offers a broadside against the constitutionality of § 802, we conclude that the statute is constitutional and does not violate Articles I or III of the Constitution or the Due Process Clause of the Fifth Amendment. After rejecting similar constitutional arguments, the district court dismissed the complaints based on the Attorney General's certification under § 802. Hepting did not appeal this underlying basis for dismissal, so we do not pass on it here. The district court's grant of the government's motion to dismiss is AFFIRMED as to the challenge of all appellants with respect to the § 802 claims and REVERSED and REMANDED as to Anderson and Lebow's claims against the government.

Each party shall bear its own costs on appeal.